# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PHILLIP KNIGHT                                         CIVIL ACTION

VERSUS                                                 NO.  15-1420

N. BURL CAIN, WARDEN                                   SECTION  "A"(4)

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Procedural History

On July 21, 2015, the undersigned issued a Report and Recommendation in which it was recommended that the federal habeas corpus petition filed by the *pro se* petitioner, Phillip Knight ("Knight"), be dismissed with prejudice as time barred under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, as codified at 28 U.S.C. § 2244.[2]  In making that recommendation, the undersigned also resolved that neither Knight nor the record demonstrated an extraordinary circumstance to warrant equitable tolling.

Knight filed objections to the report indicating that he has been taking Thorazine for fifteen years and was "unable to understand the time limitations of the AEDPA, appreciate the rules of

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 12.

court, or formulate his own legal work."[3]  As such, he requests that he be granted equitable tolling of the limitations period and review of his claims.

The District Judge thereafter referred the matter back to the undersigned Magistrate Judge for a determination as to whether Knight is entitled to equitable tolling in light of his mental illness. To assist in that determination, the undersigned Magistrate Judge obtained copies of Knight's mental health and medication records from the Louisiana State Penitentiary for the relevant time periods occurring between March 12, 2010 through March 11, 2011, and October 21, 2011 through May 9, 2013, to determine whether any mental illness, medication, or treatment created the type of extraordinary circumstance that would warrant equitable tolling.[4]

## II.  __Knight's Mental Health Records__

The records received from the Louisiana State Penitentiary reflect the following information about Knight's mental health care between March of 2010 and March of 2013, the time period relevant to equitable tolling in this case.  Knight was initially treated and diagnosed with an unspecified psychosis with a "deferred" Axis I or principal disorder and an Axis III medical issue following an intracranial procedure (which caused occasional seizures controlled by medication).[5] In fact, on January 26, 2011, the prison psychiatrist questioned whether Knight was even suffering from a mental illness and considered tapering him off of Thorazine.[6]  It was not until May 27, 2012

---

[3]Rec. Doc. No. 13.

[4]The Louisiana Department of Corrections records have been separately filed under seal.

[5]*See*, May 4, 2010, Psychiatric Consultation Notes showing diagnosis of "Psychosis NOS" and mood disorder following an intracranial procedure; December 10, 2011, Physicians Clinic Notes referencing a deferred Axis I diagnosis.

[6]*See*, January 26, 2011, Psychiatric Consultation Notes.

that Knight's records first reflect an Axis I diagnosis of schizophrenia of a paranoid type.[7]  During the entire relevant period, however, Knight received regular follow-up examinations (about every eight to ten weeks) by the prison psychiatrist and weekly if not more frequent contact visits with the prison social workers.  An outline of the contact notes and examination reports appears as Attachment "A" at the end of this Supplemental Report and Recommendation.[8]

At every reported visit or examination, all of which were within normal limits, Knight was found to be without mental health concerns or indications of distress.  He was repeatedly found to be functioning and coping adequately, engaged, coherent and behaving appropriately.

At several visits, Knight discussed his ability to control the effects of his occasional auditory hallucinations and had good incite into the effects of and preferences for his different medications. Knight also "threatened" the medical staff several times that he would seek relief in the courts, including this federal court, to get back on his desired medication, Wellbutrin,[9] in spite of warnings of increased vulnerability to seizures.  As will be later discussed, Knight actually attempted to file a civil rights suit to accomplish this.  Nevertheless, at each meeting with medical personnel, Knight demonstrated his understanding of how to control his seizures and which medications worked best for him.  He eventually was placed back on Wellbutrin.

As for his medications, as Knight asserts in his objection to the prior Report and Recommendation, he was prescribed and received Thorazine, or its generic companion Chlorpromazine, on a regular and consistent basis throughout the relevant time period from March

---

[7]*See* May 27, 2012, Physician's Clinic Notes.

[8]*See* Attachment A.

[9]Wellbutrin is a brand name for Bupropion, an antidepressant used to treat depression and other mental/mood disorders.  http://www.medicinenet.com/bupropion-oral/article.htm.

3, 2010 through May of 2013.[10]  This medication is an anti-psychotic medication used for and in the treatment of certain mental or mood disorders, including schizophrenia.[11]   Thorazine, or Chlorpromazine, is used to aid in clarity of thought, relieve nervousness, and allow the patient to take part in everyday life by decreasing hallucinations and reducing aggressive behavior and the desire, if any, to hurt oneself or others.[12]  The potential adverse reactions are drowsiness, jaundice, increased vulnerability to infection, high blood pressure, abnormal muscle tone, motor restlessness, pseudo-parkinsonism, and/or skin, intestinal and vision changes or other allergic reactions.[13]

---

[10]The following prescriptions were in place relevant to Thorazine (chlorpromazine):

(1)     3/3/10-3/29/10: one 50mg pill at second call and two pills at third call (medication records for March 2010). This prescription was discontinued on 3/9/10.

(2)     3/10/10-6/7/10: one 50mg pill at second call and two pills at third call (medication records for March - May, 2010).  This prescription was discontinued on 5/28/10.

(3)     3/4/10-8/2/10:  one 50mg pill at second call for three months (medication records for May - July 2010).  This prescription started 5/29/10 when prior prescription was discontinued.

(4)     3/4/10-8/2/10: one 100mg pill at third call for three months (medication records for May - July 2010).  This prescription started 5/29/10 when prior prescription was discontinued.

(5)     6/29/10-9/27/10: one 50mg pill at second call for three months (medication records for August & September 2010).  This prescription was discontinued on 9/27/10.

(6)     6/29/10-9/27/10: one 100mg pill at third call for three months (medication records for August & September 2010).  This prescription was discontinued on 9/27/10.

(7)     9/14/10-12/13/10: one 50mg pill at second call for three months (medication records for October - December 2010).  This prescription was discontinued on 12/13/10.

(8)     9/14/10-12/13/10: one 100mg pill at third call for three months (medication records for October - December 2010).  This prescription was discontinued on 12/13/10.

(9)     11/23/10-2/21/11: one 50mg pill at second call for three months (medication records for January & February 2011).  A stop order was placed on this prescription on 1/26/11.

(10)    11/23/10-2/21/11: one 100mg pill at third call for three months (medication records for January & February 2011).  This prescription was discontinued on 2/22/11.

(11)    1/26/11-4/26/11: one 100mg pill at third for three months (medication records for January & March 2011).

(12)    12/16/11-12/14/12: one 100mg pill at morning and two at evening (medication records for January - July 2012); Renewed 7/12/12-7/11/13 (medication records for July - December of 2012, and January & March 2013); Renewed 3/11/13-3/10/14 (medication records for March - May 2013).

[11]shttp://www.pdr.net/drug-summary/Chlorpromazine-Hydrochloride-Tablets-chlorpromazine-hydrochloride-693; and http://www.medicinenet.com/chlorpromazine_tablets_liquid-oral/article.htm.

[12]http://www.medicinenet.com/chlorpromazine_tablets_liquid-oral/article.htm.

[13]http://www.pdr.net/drug-summary/Chlorpromazine-Hydrochloride-Tablets-chlorpromazine-hydrochloride-693.

III.    <u>**Standards for Equitable Tolling**</u>

The post-AEDPA jurisprudence provides for equitable tolling where <u>rare or extraordinary</u> circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner.  *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (finding

that tolling is <u>not</u> justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

**IV.   <u>Discussion</u>**

The undersigned found and reported in the prior Report and Recommendation that Knight had not presented, and the record did not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.  After reviewing Knight's medication and mental health records, the same conclusion is reached.  These records do not contain any indication that Knight was unable to comprehend or understand anything because he was on Thorazine.  The known side-effects to Thorazine, listed above, do not include anything that would indicate an inability to communicate or understand or appreciate court rules or the passage of time such as the AEDPA's limitations period.  In fact, Thorazine is designed to aid Knight in his daily function and thought processes and the Wellbutrin, as Knight told medical personnel, helped him to focus.

Knight also indicated to medical personnel that he was doing well on Thorazine, and he was found at each visit to be cognitive, clear in speech, and functioning adequately in his everyday life. So much so that, when Knight did not get the medication (Wellbutrin and Benadryl) he demanded, Knight threatened to and in fact did submit a civil rights suit in this Court seeking an order to get that medication.  As will be further addressed, while Knight was unable to proceed as a pauper here,

the attempt to file suit and then appeal the initial pauper order demonstrates a clear understanding of the judicial system and an ability to access the courts.

The medical records contain none of the extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling. The fact that Knight has a mental diagnosis and takes medication is not rare or extraordinary. His mental health records do not indicate that he was mentally unable to pursue his rights or understand and comprehend legal rules and proceedings or physically prevented from doing so by his condition or the prison environment.

In fact, the records of this Court establish that Knight has a clear ability and understanding of how court rules work and how to pursue his rights when he chooses to do so. Knight filed two prior federal habeas petitions challenging his second degree murder conviction, both of which were dismissed for failure to exhaust state court remedies before bringing the instant petition.[14]

In addition, Knight further has demonstrated his understanding of the rules and requirements the AEDPA in habeas corpus proceedings in other ways. For example, on April 17, 2014, Knight filed a motion with a memorandum in support in the United States Fifth Circuit Court of Appeals seeking authorization to file a second or successive § 2254 petition challenging his 1987 conviction for aggravated crime against nature. Fifth Cir. App. No. 14-20278. While this motion was unsuccessful, the fact that Knight knew to pursue the authorization before attempting to file a second or successive application is quite telling of his understanding of the AEDPA.[15]

---

[14] *See*, Civil Action Nos. 08-3727 "A"(6), and 08-5103 "A"(6).

[15] Knight initially challenged the 1987 conviction in this Court in Civ. Action Nos. 06-10809 "A"(6) (pauper denied), 07-1272 "N"(6) (denied for lack of subject matter jurisdiction-not in custody on that conviction), 07-2801 "A"(6) (pauper denied), 12-674 "A"(6) (dismissed without prejudice for failure to obtain authorization to file a second or successive petition).

Knight also has filed sixteen (16) *pro se* civil rights suits in this Court between 2005 and 2008, some of which challenged the veracity of the prosecution against him leading to his current incarceration.[16]  In those cases that proceeded beyond pauper denial, Knight, acting *pro se*, filed pretrial motions, participated in conferences, hearings, and trials, filed timely objections, and even pursued timely appeals to the circuit court.   His prolific filing ultimately has caused him to fall under the three-strikes rule of 28 U.S.C. § 1915(g), prohibiting him from pursuing pauper status in non-habeas civil cases.[17]

Knight in fact submitted his seventeenth (17th) *pro se* 42 U.S.C. § 1983 complaint for filing in this Court on July 17, 2012, under Civ. Action 12-1861"S"(1), shortly after "threatening" the prison medical personnel that he would get a court order to force them to give him Wellbutrin.  In that *pro se* complaint, Knight asserted that the prison mental health personnel were refusing to give him the proper medication to accompany his Thorazine prescription.  The pleading was submitted by Knight *pro se*, on the proper form, properly completed, and accompanied by a fully completed and certified pauper application.  The assigned Magistrate Judge denied Knight's request to proceed *in forma pauperis* in that civil action under the three-strikes provision of § 1915(g).  Knight then exercised his right to appeal the Magistrate Judge's ruling to the District Judge, and the denial of pauper status was affirmed.

---

[16]These case numbers include: Civil Action Nos. 05-3963"F"(2) (pauper denied for failure to provide a certification), 05-3964"C"(3) (same), 05-3965"C"(4) (same), 05-3966"K"(3) (same), 05-3969"A"(4) (same), 05-5460"B"(4) (same), 06-4544"C"(1) (dismissed in part as frivolous, dismissed in part after bench trial where Knight represented himself, appeal dismissed), 06-4537"S"(3) (dismissed as frivolous), 06-4538"J"(2) (dismissed as frivolous, failure to exhaust), 06-10552"I"(2) (pauper denied for failure to provide a certification), 07-503"I"(5) (dismissed as frivolous, failure to exhaust), 07-1124"F"(3) (dismissed as frivolous, failure to exhaust), 07-2819"F"(1) (pauper denied per three-strikes rule), 08-3621"R"(4) (same), 08-3832"R"(2) (same), 08-4033"M"(1) (same).

[17]Knight has also filed suits in the Middle District of Louisiana: Civil Action Nos. 11-320-BAJ-SCR (pauper denied per three-strikes rule), 11-321-RET-DLD (same).

## V.   <u>Conclusion</u>

Having considered Knight's objections and having thoroughly reviewed the records of this Court and Knight's mental health records, there is no basis for equitable tolling in this case.  Knight has shown that he can formulate his own legal work as demonstrated by the numerous filings in this Court alone.  He also has the ability to understand the rules of court and requirements of the AEDPA.

His mental health records also provide insight into his ability to function normally within the prison, express his views as to his medication and care, and otherwise do not reflect that Knight was incapacitated, restrained, or medically unable to timely file a habeas petition in this Court.

For the foregoing reasons and those presented in the prior Report and Recommendation, Knight's habeas petition filed April 25, 2015, which was over four years after the one-year AEDPA filing period expired on March 11, 2011, was untimely filed and should be dismissed for that reason.

## VI.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Knight's objections be **OVERRULED** and his petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[18]

New Orleans, Louisiana, this 28th day of January, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[18]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.